**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| IN RE LIFELOCK, INC., MARKETING AND SALES PRACTICES LITIGATION | MDL Docket No. 08-1977-PHX-MHM<br><br>(<u>Gerhold v. Lifelock, Inc., et al.</u>, CV-08-2031-PHX-MHM; <u>Falke v. Lifelock, Inc., et al.</u>, CV-08-2027-PHX-MHM )<br><br>**ORDER** |

Currently pending before the Court is Plaintiff Kevin Gerhold, individually, and on behalf of all others similarly situated in the State of West Virginia, and Plaintiffs Gerald and Marlene Falke, individually, and on behalf of all others similarly situated in the State of Maryland, Consolidated Motion to Remand Pursuant to 28 U.S.C. § 1447. After reviewing the pleadings and holding oral argument, the Court issues the following Order.

**I.    Procedural Background**

On June 13, 2008, Defendants LifeLock and Richard Todd Davis filed a Motion for Transfer and Consolidation, Pursuant to 28 U.S.C. §1407, with the Judicial Panel on Multi-district Litigation (the "MDL Panel"). On October 17, 2008, the MDL Panel issued a Transfer Order in the consolidated litigation entitled, <u>In Re Lifelock, Inc. Marketing and Sales Practices Litigation</u>, MDL No. 1977 transferring all of the Lifelock cases to this Court.

In the Transfer Order, the MDL Panel found that the nine actions pending in federal courts across the country, including the Falke and Gerhold cases which were removed from state court to federal court, and at least three tag along actions:

> [I]nvolve[d] common questions of fact, and that centralization under [28 U.S.C.] Section 1407 in the District of Arizona will serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation. All actions share allegations concerning the marketing, advertising, and service guarantee offered by common defendant LifeLock. Centralization under Section 1407 will eliminate duplicative discovery; prevent inconsistent pretrial rulings, particularly with respect to class action issues; and conserve the resources of the parties, their counsel and the judiciary.

(See Dkt.#1.)

To further its goal of efficiently guiding through pre-trial all of the cases that had been consolidated and transferred, on January 9, 2009, the Court issued its Practice and Procedure Order. (See Dkt.# 35.) On February 11, 2009, the Court directed Plaintiffs to provide briefing as to the appointment of an interim lead counsel pursuant to Fed. R. Civ. P. 23(g). (See Dkt.#46.) On February 19, 2009, the Court held an Initial Status Conference where it heard oral arguments on the appointment of interim lead counsel. It also discussed setting forth a Scheduling Order for the case including deadlines for the filing of a consolidated amended complaint, motion(s) to dismiss, fact and expert discovery, class certification, and summary judgment. (See Dkt.#58.) On February 23, 2009, the Court issued an Order naming Hagens Berman Sobol Shapiro LLP as interim lead counsel pursuant to Fed.R.Civ.P. 23(g), and on March 6, 2009, the Court entered its Amended Scheduling Order. (See Dkt.#69.)

Pursuant to the Court's Scheduling Order, counsel for the Falke and Gerhold Plaintiffs filed the instant Consolidated Motion to Remand. The Court would be remiss if it did not note the unusual procedural posture of this motion. Interestingly, Defendants LifeLock and Davis declined to file a brief before the Court on this matter. Defendants can therefore be fairly characterized as having neither opposed nor supported the remand sought by the Falke and Gerhold Plaintiffs. Although Defendants declined to file a brief, interim lead counsel for the proposed MDL class did. The remaining MDL Plaintiffs, acting through its interim lead counsel, oppose the Falke and Gerhold Plaintiffs' motion As such, this issue pitts

Plaintiffs from two of the consolidated cases against Plaintiffs from the remaining fourteen in a struggle over whether this Court should keep together or break apart the MDL action that has been transferred to it by the MDL Panel.[1]

## II. Discussion

The removal statute authorizes the defendant to remove to federal court "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). In other words, "[o]nly state court actions that originally could have been filed in federal court may be removed to federal court by the defendant." Caterpillar, Inc. v. Williams, 482 U.S. 386, 392 (1987). The party invoking the removal statute bears the burden of establishing federal jurisdiction. See Ethridge v. Harbor House Restaurant, 861 F.2d 1389, 1393 (9th Cir. 1988). Courts strictly construe the removal statute against removal. Id.

In the instant motion, the Falke and Gerhold Plaintiffs contend that Defendants LifeLock and Davis failed to meet their burden under 28 U.S.C. § 1331 and § 1332 to invoke federal jurisdiction. Accordingly, these two Plaintiffs argue that the Court must remand their Complaints back to state courts in West Virginia and Maryland where their cases originated. The non-moving Plaintiffs have responded by arguing that the Falke and Gerhold Complaints meet 'arising under' jurisdiction pursuant to 28 U.S.C. § 1331. Furthermore, the remaining Plaintiffs argue that in the event the Court grants the Falke and Gerhold Plaintiffs' consolidated remand motion, then counsel for those parties, Mr. David Paris, should not be permitted to simultaneously represent parties in the MDL action and before West Virginia and Maryland state courts.

---

[1] Lastly, within five days following the Court's ruling on the instant motion, interim lead counsel for proposed MDL class will be filing the Master Complaint; fact and expert discovery in the MDL will then commence with the filing of the Master Complaint and will continue for 13 months.

### A.    28 U.S.C. § 1332: Diversity Jurisdiction

Section 1332(a) vests the district courts with "original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $ 75,000, exclusive of interest and costs, and is between" diverse parties. See 28 U.S.C. § 1332(a). Despite the statute's silence, the Supreme Court has held that § 1332 requires complete diversity of citizenship. Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 553 (2005) ("In a case with multiple plaintiffs and multiple defendants, the presence in the action of a single plaintiff from the same State as a single defendant deprives the district court of original diversity jurisdiction over the entire action.") (internal citations omitted).

The Class Action Fairness Act of 2005 ("CAFA") modified traditional principles of diversity jurisdiction in order to make it easier for defendants to remove class actions to federal court. See U.S.C. § 1332(d). CAFA grants the district court with original jurisdiction over any civil case where, among other things, the amount in controversy exceeds the sum or value of $ 5,000,000, exclusive of interest and costs, and minimal diversity between the parties is present — for purposes of CAFA, minimal diversity means that at least one member of the purported class must be diverse from at least one named defendant. See U.S.C. § 1332(d). In addition, the Ninth Circuit has held that CAFA did not shift to the plaintiff the burden of establishing that there is no subject matter jurisdiction in federal court. See Abrego v. Dow Chem. Co, 443 F.3d 676, 685 (9th Cir. 2006).

In the instant case, the Falke and Gerhold Plaintiffs contend that the notice of removal filed by Defendants LifeLock and Davis fails to set forth the requirements needed to invoke federal diversity jurisdiction pursuant to § 1332(a) or CAFA. Specifically, the moving Plaintiffs claim that Defendants have not provided any factual proof that the Falke and Gerhold Complaints meet the amount in controversy requirement under either 1332(a) or CAFA. For purposes of traditional diversity jurisdiction under § 1332(a), in order to satisfy the amount in controversy requirement, each proposed individual class member in both the West Virginia and Maryland cases must have an individual claim against the Defendants that exceeds $75,000. For purposes of invoking jurisdiction under CAFA, the amount in

- 4 -

controversy between all proposed plaintiffs in the <u>Falke</u> and <u>Gerhold</u> classes and Defendants LifeLock and Davis must exceed $5,000,000. In other words, to meet the amount in controversy under CAFA, Defendants' liability must be greater than $5,000,000 in both actions, separately.

According to the moving Plaintiffs, their two Complaints do not contain any specific damages allegations, and Defendants' Notice of Removal in both cases contain nothing more than conclusory statements on damages but are otherwise devoid of specific facts that might tend to establish the amount in controversy requirement has been met. With respect to the <u>Falke</u> Complaint, Defendants' Notice of Removal states nothing more than that the amount in controversy exceeds $75,000 under § 1332(a), and $5,000,000 for CAFA. (<u>See</u> Dkt.#74, Ex. C at ¶ 6-7.) With respect to the <u>Gerhold</u> Complaint, the Notice of Removal only states that the amount in controversy exceeds $75,000, but it does not even make reference to the $5,000,000 in controversy required under CAFA. (<u>See</u> Dkt.#74.,Ex. D at ¶ 7.) As the moving Plaintiffs point out, the amount specified in the Complaint usually controls whether the jurisdictional amount in controversy requirement has been satisfied. <u>Bartinkowski v. NVR, Inc.</u>, 2009 U.S. App. LEXIS 852, *10-11 (4th Cir. Jan. 16, 2009) (citing <u>Wiggins v. North Am. Equitable Life Assurance Co.</u>, 644 F.2d 1014, 1016 (4th Cir. 1981)). However, when plaintiffs are not required by state law to specify damages in their state court complaint, "the removing defendant must prove by a preponderance of the evidence that the amount in controversy requirement has been met." <u>Abrego</u>, 443 F.3d at 683. Under this burden, the defendant must provide evidence that it is 'more likely than not' that the amount in controversy satisfies the federal diversity jurisdictional amount requirement. <u>Id</u>. (citing <u>Sanchez v. Monumental Life Ins. Co.</u>, 102 F.3d 398, 404 (9th Cir. 1996)).

In the instant case, nothing contained in Defendants Notice of Removal would permit the Court to conclude that Defendants have demonstrated that it is more likely than not that the two Complaints state individual claims for over $75,000 or are worth in total more than $5,000,000 each. Of course, as previously noted, Defendants chose not to file a response brief on this issue, or supplement their Notice of Removal with additional factual or legal

- 5 -

support. Besides a bare bones assertion that the value of the Falke and Gerhold cases exceed the amount in controversy requirement of § 1332(a) and CAFA, no evidence in the Notice of Removal or elsewhere supports this claim. Standing alone, Defendants Notice of Removal does not prove by a preponderance of the evidence that the Falke and Gerhold Complaints properly invoke federal diversity jurisdiction under either § 1332(a) or CAFA.

### B. 28 U.S.C. § 1331: Federal Question Jurisdiction

Under 28 U.S.C. § 1331, district courts "have original jurisdiction [over] all civil actions arising under the Constitution, laws, or treaties of the United States." See 28 U.S.C. § 1331. A case 'arises under' federal law if (1) a plaintiff's "well-pleaded complaint establishes either that federal law creates the cause of action" or (2) that the "plaintiff's right to relief under state law requires resolution of a substantial question of federal law in dispute between the parties." Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for S. Cal., 463 U.S. 1, 27-28 (1983).

With respect to second type of cases, a state based cause of action can invoke federal question jurisdiction pursuant to § 1331, only if it "necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." Grable & Sons Metal Prods. v. Darue Eng'g & Mfg., 545 U.S. 308, 314 (2005).

However, the Supreme Court has called the Grable rule "special," noting that it encompasses no more than a "small category" of cases. Empire HealthChoice Assurance, Inc. v. McVeigh, U.S. 677, 699 (2006). The Supreme Court further emphasized that "it takes more than a federal element to open the arising under door." Id. at 701. This comports with the Ninth Circuit's pre-Grabel rule that federal "jurisdiction over a state-law claim is not created just because a violation of federal law is an element of the state law claim." Wander v. Kaus, 304 F.3d 856, 859 (9th Cir. 2002). Furthermore, merely because "a [state-law] claim can be supported by alternative and independent theories — one of which is a state law theory and one of which is a federal law theory — federal question jurisdiction does not attach . . .." Glanton v. Harrah's Entm't, Inc., et al., 297 Fed. Appx. 685, 2008 U.S. App.

LEXIS 22487, at ** 3-4 (9th Cir. 2008) (citing Rains v. Criterion Sys., Inc., 80 F.3d 339, 342-43 (9th Cir. 1996)). "[C]ountless claims can be said to depend in some way on federal propositions, yet not all such cases 'arise under' federal law," Hunter v. United Van Lines, 746 F.2d 635, 645 (9th Cir. 1985), and the mere appearance of a federal issue is not "a password opening federal courts to any state action embracing a point of federal law." Grable & Sons, 545 U.S. at 314.

In the instant case, because the Falke and Gerhold Complaints allege nothing more than that Defendants LifeLock and Davis have violated the West Virginia Consumer Credit and Protection Act, W. Va. Code § 46A-1-101 et seq., and the Maryland Consumer Protection Act, Md. Commercial Code Ann. §13-301 et seq., — which are state law causes of action — their claims were not explicitly created by federal law. Therefore, this Court can only properly assume federal question jurisdiction over these two cases if Plaintiffs state law causes of action meet the two-part test promulgated by the Supreme Court in Grable and related cases.

**1. Actual and Disputed Issue of Federal Law**

The MDL Plaintiffs opposing remand contend that the Falke and Gerhold Complaints raise an actual and disputed issue of federal law, since resolution of these cases necessarily requires a determination of whether Defendants LifeLock and Davis violated the Fair Credit Reporting Act, 15 U.S.C. §1681, et seq. ("FCRA"). According to the non-moving Plaintiffs, throughout both Complaints, the Falke and Gerhold Plaintiffs allege violations of the FCRA and refer to other conduct implicating the FCRA, including the manner in which LifeLock's services impacted its subscribers' creditworthiness, or otherwise violated protections afforded under the FCRA. For example, according to the non-moving Plaintiffs, both the Falke and Gerhold Complaints allege that LifeLock's services can negatively impact the subscriber's credit score and that LifeLock fails to disclose the 'true origin' of the free credit report it obtains for its customers. Thus, the remaining MDL Plaintiffs argue that the success of the Falke and Gerhold Plaintiffs' cases will inevitably turn on their ability to offer evidence that LifeLock and Davis violated federal law.

In their reply, the moving Plaintiffs argue that the state based claims contained in the Falke and Gerhold Complaints are unrelated to the statutory framework of the FCRA, and that these causes of action are based solely on LifeLock's alleged campaign of false advertising, which is actionable under state consumer protection statutes, irrespective of any federal issues. According to the moving Plaintiffs, their two Complaints seek to establish that LifeLock deceived subscribers residing in Maryland and West Virginia by misrepresenting the scope of its services, misrepresenting the effectiveness of its services, omitting the adverse impact its services may have on a subscriber's credit, omitting that credit reports are free, and misrepresenting the scope of its purported $ 1,000,000 guarantee. Such allegations, according to the moving Parties, do not turn upon an analysis of the FCRA.

This Court agrees with the moving Parties and finds that their state law claims do not raise an actual and disputed issue of federal law, and as such do not meet 'arising under' jurisdiction pursuant to § 1331. First, despite representations made by the remaining MDL Plaintiffs, it is not at all clear that proving a violation of the FCRA is an essential element of the Falke and Gerhold Plaintiffs' claims. Certainly, demonstrating a FCRA violation is not generally required for any and all claims brought under West Virginia or Maryland's consumer protections statutes. It is therefore not inconceivable for the Falke and Gerhold Plaintiffs to successfully assert claims under these statutes without having to rely upon purported violations of the FCRA. Because proving a FCRA violation is not a legal requirement or an essential element of the two consumer protection statutes at issue, the moving Plaintiffs might be said to possess "alternative and independent theories" under state law. Glanton, U.S. App. LEXIS 22487, at ** 3-4.

Furthermore, even if the Court were to determine that proving a violation of the FCRA were an essential element of both Falke and Gerhold's state law claims, the Ninth Circuit has explicitly held that federal "jurisdiction over a state-law claim is not created just because a violation of federal law is an element of the state law claim." Wander, 304 F.3d at 859. Similarly, it is difficult for the Court to discern how the instant motion is materially distinguishable from the U.S. Supreme Court case of Merrell Dow Pharmaceuticals, Inc. v.

Thompson, 478 U.S. 804 (1986). In Merrell Dow, the plaintiffs brought a state based negligence claim in state court against a pharmaceutical manufacturer. Merrell Dow, 478 U.S. at 805-06. The Merrell Dow plaintiffs alleged that the drug at issue caused certain birth defects in children whose mothers had taken the drug during pregnancy. Id. The plaintiffs alleged that because the drug had been allegedly mislabeled in violation of the federal Food, Drug and Cosmetic Act, 21 U.S.C. § 301, et seq., the doctrine of negligence per se applied, and the manufacturer would be held liable for any harm that it actually and proximately caused. Id. The defendant then attempted to remove the case to federal court where it asserted federal question jurisdiction under § 1331. Ultimately, the Supreme Court rejected the defendant's argument that a simple state tort action could 'arise under' federal law merely because the defendant's liability was premised upon a violation of a federal regulation.[2] The same result should apply here: even if Falke and Gerholds' state consumer protection claim is premised upon a violation of the FCRA, that by itself is not enough to invoke 'arising under' jurisdiction under § 1331.

Moreover, the non-moving MDL Plaintiffs' argument appears inconsistent with other relevant Supreme Court decisions on the 'arising under' issue. For example, the Supreme Court has repeatedly stated that "the classic example of federal-question jurisdiction predicated on the centrality of a federal issue is Smith v. Kansas City Title & Trust Co., 255 U.S. 180 (1921)." Empire HealthChoice, 547 U.S. at 699 n.5; Grable, 545 U.S. at 312 ("The classic example is Smith . . ."). Smith concerned "a suit by a shareholder claiming that the defendant corporation could not lawfully buy certain bonds of the National Government because their issuance was unconstitutional. Although Missouri law provided the cause of

---

[2] Also at issue in Merrell Dow was the fact that Congress had not created a private right of action to enforce violations of the federal Food, Drug and Cosmetic Act. Merrell Dow, 478 U.S. at 813 (Congress' intent to deny a private a right of action was "tantamount to a congressional conclusion that the presence of a claimed violation of the statute as an element of a state cause of action is insufficiently 'substantial' to confer federal question jurisdiction."). Because the FCRA does contain a private right of action, that portion of the Merrell Dow opinion is not entirely relevant to the instant case.

action, the Court recognized federal-question jurisdiction because the principal issue in the case was the federal constitutionality of the bond issue." Grable, 545 U.S. at 312 (citing Smith, 255 U.S. at 199. Obviously, there is a important federal interest that is at stake in ensuring that the issuance of U.S. bonds are governed by set of uniform rules of national applicability. It would be an untenable situation for the same U.S. bonds to be deemed unconstitutional in the state of Missouri, but say, perfectly acceptable for state-wide distribution in neighboring Kansas. In no sense does the instant motion present facts that are comparable with a case like Smith. Instead, the Falke and Gerhold Complaints present nothing more than alleged violations of two run-of-the-mill state based consumer fraud statutes. Unlike Smith, Grable or other cases where a state based claim was held to 'arise under' federal law, there is no special need for federal uniformity in adjudicating cases Falke and Gerhold in federal court. Cf. Grable, 545 U.S. at 315 (noting that there is a substantial federal interest at stake when the interpretation of a provision of the federal tax code might affect the government's ability to efficiently collect delinquent taxes).

### 2. Congressionally Approved Balance of Federal and State Judicial Responsibilities

Although the MDL Plaintiffs' attempt to invoke federal question jurisdiction fails under the first prong of Grable, it is worth addressing their remaining claims that the balance between federal and state judicial responsibilities would be best served by keeping these two cases in federal court. Among other things, the non-moving Plaintiffs contend that allowing remand of the Gerhold and Falke Complaints, which allege facts that are almost identical to the Complaints of other MDL Plaintiffs, would invite lawyers across the country to file similar and unremovable lawsuits in various state court. Thus, resulting in forcing Defendants to engage in costly and redundant litigation in multiple forums.

First, it should be noted that permitting a remand of the Falke and Gerhold cases will in no way interfere with the MDL action. The remaining MDL cases will proceed as scheduled, and the only difference in the constitution of the MDL from this point forward will be that—in order to avoid duplicative litigation, inconsistent judgments, and to minimize

or avoid the preclusive effect of the doctrines of res judicata and collateral estoppel—claims brought by proposed class members in the State of West Virginia and the State of Maryland will no longer be entertained by this Court as part of the MDL. However, the MDL will otherwise proceed forward with respect to proposed class members located in every other appropriate state.

Second, with respect to the remaining MDL Plaintiffs' argument that this ruling may invite lawyers to file tag-along state based claims in the remaining forty-eight states, that argument is unavailing. If Defendants were worried about the potential costs of facing unremovable parallel state actions, one assumes that they would have weighed in on the instant motion; but they did not.

Accordingly, the Court finds that the Falke and Gerhold Complaints do not invoke federal question jurisdiction under § 1331.

### C.  Potential Conflicts if Mr. Paris Continues to Serve as Plaintiffs' Counsel in the MDL Proceeding

The final issue relates to an apparent request made by interim lead counsel that Mr. Paris should be removed as counsel of record in his remaining MDL cases once the Court remands Falke and Gerhold to their respective state courts.[3] Although interim lead counsel has not filed an official motion requesting Mr. Paris' disqualification, in their responsive briefing on the remand issue, interim lead counsel did affirmatively request that the Court not permit Mr. Paris to simultaneously represent clients in the MDL and in West Virginia and Maryland state court due to an alleged impermissible conflict of interest that dual representation would cause. Furthermore, at oral argument, interim lead counsel restated their position with respect to Mr. Paris' continued role in the MDL action.

Under Rule 1.7(a) of the State of Arizona's Rules of Professional Conduct, "a lawyer shall not represent a client if the representation involves a concurrent conflict of interest."

---

[3]These cases are: Pasternack, et al. v. Lifelock, Inc., et al., (D.N.J. 3:08-cv-2098); Martinez-Azoy v. Lifelock, Inc., et al.,(S.D. Fla. 1:08-cv-21989); Ly v. Lifelock, Inc., et al., (E.D. Tex. 2:08-cv-242); and Dillon v. Lifelock, Inc., et al., (C.D. Cal. 2:08-cv-4515).

- 11 -

Under Rule 1.7(a)(1)-(2) a concurrent conflict of interest exists when, "the representation of one client will be directly adverse to another client," or "there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer." It is not clear whether representing the Falke and Gerhold Parties as well as four additional MDL Parties creates an inevitable concurrent conflict of interest for Mr. Paris, such that the Court would be entitled to remove him from the MDL proceedings. First, the interests of these six Parties are in no sense directly adverse. Secondly, Mr. Paris' representation is not necessarily 'materially limited' in the MDL action given his responsibilities as counsel in the Falke and Gerhold matters.

It should be noted that at oral argument interim lead counsel raised the possibility that Mr. Paris may have withheld from them certain documents related to the consolidated remand motion. As previously stated, the burden of proof and production for invoking diversity jurisdiction under § 1332 fell to Defendants, who chose not to take a position on the instant consolidated motion. Interestingly, before Falke and Gerhold had been transferred to this Court by the MDL Panel, Defendants contested in the transferor federal district courts at least one earlier iteration of the consolidated remand motion. According to interim lead counsel, while litigating this previous remand motion, Mr. Paris may have received from Defendants documents that potentially supported the invocation of federal diversity jurisdiction. These documents arguably reflected Defendants position with respect to the total number of LifeLock clients in West Virginia and Maryland and LifeLock's possible liability in each state. As such, these documents may have stated that the $5,000,000 requirement of CAFA had been met. At oral argument, interim lead counsel suggested that they were unable to secure these or other potentially relevant documents from Mr. Paris, which may have aided interim lead counsel in contesting the consolidated remand motion.

If true, these accusations are troubling. Without directly addressing the merits of the non-moving Plaintiffs' claims, the Court notes in the future it expects Mr. Paris, along with every other attorney for the named Plaintiffs, to cooperate with the Court appointed interim

lead counsel. Obviously, cooperation includes complying with their requests for potentially relevant information.

Although the Court declines to take any action with respect to Mr. Paris, it notes that if an attorney were to receive documents in a state court lawsuit and then withhold those documents from the Court appointed interim lead counsel in a related MDL case — should that lawyer concurrently represent clients in both matters — such action would raise serious questions under Rule 1.7(a) of the State of Arizona's Rules of Professional Conduct. Therefore, while the Court declines to disqualify Mr. Paris from the MDL action, should new and substantial allegations relating to the development of a potential concurrent conflict of interest develop in the future, the Court will again take up the issue, if so prompted.

**Accordingly,**

**IT IS HEREBY ORDERED** granting Plaintiff Kevin Gerhold, individually, and on behalf of all others similarly situated in the State of West Virginia, and Plaintiffs Gerald and Marlene Falke, individually, and on behalf of all others similarly situated in the State of Maryland, Consolidated Motion to Remand to State Court Pursuant to 28 U.S.C. § 1447. (Dkt.#74.)

**IT IS FURTHER ORDERED** directing the Clerk to remand <u>Gerhold v. Lifelock, Inc.,et al.</u>, 2:08-0857 (S.D.W.V.) back to the Circuit Court of Jackson County, West Virginia.

**IT IS FURTHER ORDERED** directing the Clerk to remand <u>Falke v. Lifelock, Inc., et al.</u>, 08-CV-1351 (D. Md.) back to the Circuit Court for Washington County, Maryland.

**IT IS FURTHER ORDERED** that Plaintiffs' Master Complaint not include claims from individuals located in either the State of West Virginia or the State of Maryland.

/ / /

**IT IS FURTHER ORDERED** granting Justin M. Klein's Motion to Withdraw as Attorney. (Dkt.#91.)

DATED this 24th day of July, 2009.

*Mary H. Murguia*
United States District Judge